## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| F.M., an individual;<br><br>      Plaintiff<br><br>  -against-<br><br>BEST WESTERN INTERNATIONAL, INC.;<br>HYATT HOTELS CORPORATION; AND<br>RED LION HOTELS CORPORATION<br><br>     Defendants | CIVIL ACTION NO: 3:19-cv-02901<br><br>**PLAINTIFF'S COMPLAINT**<br>**JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW the Plaintiff F.M., by and through her undersigned counsel, and respectfully submits her complaint for damages against Defendants, and makes the following averments.

## INTRODUCTION

1. For years, sex trafficking ventures have brazenly operated in and out of hotels throughout this country. Criminals parade their misconduct openly on hotel properties throughout the United States while the hotels and hospitality industry remain willfully blind to the criminal misconduct so that they may continue to earn a profit at the expense of human life, human rights, and human dignity.

2. Best Western International, Inc. (hereinafter "Best Western"), Hyatt Hotels Corporation (hereinafter "Hyatt"), and Red Lion Hotels Corporation (hereinafter "RLH") (collectively "the Defendants") know, and have known for more than a decade, that sex trafficking repeatedly occurs under their flag throughout the country. Rather than taking timely and effective measures to thwart this epidemic, Best Western International, Inc., Hyatt

Corporation, and Red Lion Hotels Corporation have instead chosen to ignore the open and obvious presence of sex trafficking on their hotels, enjoying the profit from rooms rented for this explicit and apparent purpose.

3.     This action for damages is brought by the Plaintiff a survivor of sex trafficking (hereinafter identified by her initials "F.M.")  under the federal William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (hereinafter "TVPRA").

4.     F.M. was first trafficked for commercial sex at the age of four (4) in Irving, Texas by her father, who sold F.M. to traffickers to sustain his drug addiction. From the age of four (4) until the age of eighteen (18), F.M. was trafficked to pedophilic buyers of commercial sex and brutally abused at the Best Western® Plus DFW Airport Suites and the Best Western® Irving Inn & Suites at DFW Airport in Irving, Texas, as well as the Hyatt® House Dallas/Frisco in Frisco, Texas. F.M. was forced to participate in vaginal, oral and anal intercourse. By the time she was twenty (20) years old, F.M. was in the possession of her third trafficker and being trafficked at America's Best Value Inn® Irving/Dallas in Irving, Texas.  Since the impressionable age of four (4) and throughout her minor and young adult years, F.M. was trafficked to paying pedophiles and strangers in the Defendants' facilities, as the Defendants did nothing but profit.

5.     The Plaintiff now brings this action for damages against the Defendants listed herein.  The Defendants, in violation of 18 U.S.C. § 1595, knowingly benefited from facilitating a venture that it knew, or at the very least *should have known*, to be engaging in sex trafficking in violation of 18 U.S.C. § 1591(a).

6.     F.M. was advertised on Craigslist.com against her will, physically tortured, and then sexually exploited under duress at the Defendants' hotels in Texas, including: Best Western® Plus DFW Airport Suites, Hyatt® House Dallas/Frisco, the Best Western® Irving Inn &

Suites at DFW Airport, and the America's Best Value Inn® Irving/Dallas.

7.      As a direct and proximate result of the Defendants' consistent refusals to prevent or stop human trafficking on their hotel properties, F.M. was sex trafficked, sexually assaulted, sexually exploited, and victimized repeatedly at the Defendants' hotels.

8.      The Plaintiff brings this action pursuant to the Trafficking Victims Protection Reauthorization Act 18 U.S.C. §1595, against the Defendants who enabled, harbored, held, facilitated, and financially benefited from the sex trafficking venture in which F.M. was trafficked, sexually exploited, and brutally victimized in violation of 18 U.S.C. §1591 (a).

## PARTIES

9.      The Plaintiff, having moved to proceed anonymously[1] and herein identified by her initials F.M., was first trafficked at the age of four (4) years old until age twenty-six (26) throughout Texas for the purposes of commercial sex.  The Plaintiff is a victim of trafficking pursuant to 22 U.S.C. §7102 (15) and 18 U.S.C. §1591 (a), and a victim of a "severe form of trafficking" as it is defined under 22 U.S.C §7102 (14).  The Plaintiff resides in Tarrant County, Texas.

10.     Defendant Best Western International, Inc. (hereinafter "Best Western") is one of the largest hotel companies in the world offering public lodging services directly or through its affiliates, subsidiaries, and franchisees.  It is an Arizona corporation headquartered in Phoenix, Arizona. Best Western International, Inc. may be served with service of process by serving its registered agent The Prentice Hall Corporation System, Inc. at 2338 West Royal Palm Road, Suite J, Phoenix, AZ 85021.

---

[1] Contemporaneously with the Complaint, Plaintiff F.M. filed a Motion for Protective Order and Leave to Proceed Anonymously with Memorandum in Support based upon the nature of the allegations in the instant Complaint, which are of an inherently intimate and personal nature. That motion is pending. Undersigned Counsel will provide her identity to counsel for the Defendants upon proper effectuation of service.

a. Best Western® brand hotels are Best Western Hotels.

b. As a hotel operator, Defendant Best Western controls the training and policies for its branded properties including the Best Western® hotels where F.M. was trafficked. Defendant Best Western represents that it considers guest safety and security important and requires the hotels in its portfolio to comply with Best Western brand standards and all local, state, and federal laws.[2]

c. By and through its relationship with the staff at the Best Western® Plus where F.M. was trafficked, and the hotel guest perpetrator who trafficked F.M. at Best Western® hotels, Defendant Best Western knowingly benefited, or received anything of value, from its facilitation of, or participation in, a venture which it knew or should have known to engage in sex trafficking.

d. Best Western receives a percentage of the gross room revenue from the money generated by the operations of all Best Western Plus® hotels, including a percentage of the revenue generated from the rate charged for the rooms in which the Plaintiff was sex trafficked.

e. Best Western owns, supervises, and/or operates the Best Western® Plus DFW Airport Suites located at 5050 West John Carpenter Freeway and the Best Western® Irving Inn & Suites at DFW Airport located at 4110 Airport Freeway in Irving, Texas.

f. Best Western is subject to the jurisdiction of this Court because it regularly transacts business in Texas, operates dozens of hotels in Texas, including the Best Western® Plus DFW Airport Suites and Best Western® Irving Inn & Suites

---

[2] Best Western International Human Rights Policy, https://www.bestwestern.com/en_US/about/press-media/best-western-human-rights-policy.html (last visited Nov. 20, 2019).

at DFW Airport, contracts to supply services in Texas, caused indivisible injuries to the Plaintiff in Texas, and profited from an illegal sex trafficking venture at the Best Western® Plus DFW Airport Suites and Best Western® Irving Inn & Suites at DFW Airport.

11.     Defendant Hyatt Corporation (hereinafter "Hyatt") is another of the largest hotel companies in the world offering public lodging services directly or through its affiliates, subsidiaries, and franchisees.  It is a Delaware corporation headquartered in Chicago, Illinois and can be served by its registered agent United States Corporation Company, 251 Little Falls Drive, Wilmington, DE 19808.

a.   Hyatt® House brand hotels are Hyatt Hotels.

b.   As a hotel operator, Defendant Hyatt controls the training and policies for its branded properties, including the Hyatt House® hotel where F.M. was trafficked. Defendant Hyatt represents that it considers guest safety and security important and requires the hotels in its portfolio to comply with Hyatt brand standards and all local, state, and federal laws.[3]

c.   By and through its relationship with the staff at the Hyatt House® where F.M. was trafficked and the perpetrator who trafficked F.M. at the Hyatt House® while registered as a guest there, Defendant Hyatt knowingly benefited, or received anything of value, from its facilitation of, or participation in, a venture which it knew or should have known to engage in sex trafficking.

d.   Hyatt receives a percentage of the gross room revenue from the money generated by the operations of Hyatt House® hotels, including a percentage of

---

[3] About Hyatt: Corporate Responsibility – Human Rights, https://about.hyatt.com/en/hyatt-thrive/human-rights.html (last visited Nov. 20, 2019).

the revenue generated from the rate charged for the rooms in which the Plaintiff
was sex trafficked.

e.  Hyatt owns, supervises, and/or operates the Hyatt® House Dallas/Frisco located
at 2875 Parkwood Blvd, Frisco, TX 75034.

f.  Hyatt is subject to the jurisdiction of this Court because it regularly transacts
business in Texas, operates dozens of hotels in Texas, including the Hyatt
House® in Frisco, Texas, contracts to supply services in Texas, caused
indivisible injuries to the Plaintiff in Texas, and profited from an illegal sex
trafficking venture at the Hyatt House® in Frisco, Texas.

12.     Defendant Red Lion Hotel Corporation ("RLH Corporation") is a hotel company
offering public lodging services directly or through its affiliates, subsidiaries, and franchisees. It
is a Washington corporation and can be served by its registered agent Corporate Creations
Network, West 505 Riverside Avenue #500, Spokane, WA, 99201.

a.  Defendant Red Lion Hotel Corporation is the successor entity to Vantage
Hospitality Group, Inc. and retains successor liability for the wrongful acts of
the predecessor.

b.  America's Best Value Inn® brand hotels are RLH Corporation Hotels.

c.  As a hotel operator, Defendant RLH Corporation controls the training and
policies for its branded properties including the America's Best Value Inn®
where F.M. was trafficked. Defendant RLH Corporation represents that it
considers guest safety and security important and requires the hotels in its
portfolio to comply with RLH Corporation brand standards and all local, state,

6

and federal laws.[4]

    d.   Through its relationship with the staff at the America's Best Value Inn® where F.M. was trafficked and the perpetrator who trafficked F.M. at America's Best Value Inn® hotels while registered as a guest there, Defendant RLH Corporation knowingly benefited or received something of value from its facilitation of or participation in a venture which it knew or should have known had engaged in sex trafficking.

    e.   RLH Corporation receives a percentage of the gross room revenue from the money generated by the operations of America's Best Value Inn® hotels, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which the Plaintiff was sex trafficked.

    f.   RLH Corporation owns, supervises, and/or operates the America's Best Value Inn® Irving/Dallas located at 2611 West Airport Freeway in Irving, Texas.

    g.   RLH Corporation is subject to the jurisdiction of this Court because it regularly transacts business in Texas, operates dozens of hotels in Texas, including the America's Best Value Inn® Irving/Dallas, contracts to supply services in Texas, caused indivisible injuries to the Plaintiff in Texas, and profited from an illegal sex trafficking venture at the America's Best Value Inn® Irving/Dallas.

13.    Whenever reference is made in this Complaint to any act, deed or conduct of the Defendants, the allegation is that the Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees, or representatives who was

---

[4] *See RLH Corporation Announces Collaboration With National Safe Place Network to Provide for Youth in Need of Immediate Help and Safety Americas Best Value Inn is the first national hotel sponsor of the program,* Red Lion Hotels Corporation, April 22, 2019 https://www.globenewswire.com/news-release/2019/08/22/1905438/0/en/RLH-Corporation-Announces-Collaboration-With-National-Safe-Place-Network-to-Provide-for-Youth-in-Need-of-Immediate-Help-and-Safety.html (last visited Dec. 9, 2019).

actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the Defendants.

## JURISDICTION AND VENUE

14.     This Honorable Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 because this action arises under the Constitution, laws, or treaties of the United States (with an amount in controversy that exceeds $75,000.)

15.     Venue is proper in this district pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action, including the Defendants' misconduct and omissions, occurred in the judicial district where this action is brought.

## SEX TRAFFICKING UNDER FEDERAL LAW

16.    Sex trafficking is defined by the TVPRA under 22 U.S.C. § 7102, as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act and in which the commercial sex act is induced by force, fraud, or coercion."  This definition combines the three elements of sex trafficking as a criminal offense: the act, the means, and the purpose.

17.    To best understand the mechanism by which sex trafficking ventures are prohibited by federal criminal law, it's best to address these elements in the reverse.  Sex trafficking is slavery for the *purpose* of commercial sex, a lens on the already existing crimes prohibited by 18 U.S.C. § 1589 and §1590.  The crime of slavery can then be divided into the two (2) elements remaining: the act and the means.  The *act* is the "harboring, transporting, providing, or obtaining," of forced labor, codified as a violation of 18 U.S.C. §1590, while the *means* is labor "obtained or provided by force, fraud or coercion" and is codified as a violation

of 18 U.S.C. §1589.

18.    Thus, while the complete definition of 'sex trafficking' is found in the TVPRA under 22 U.S.C. § 7102, and it is specifically prohibited under 18 U.S.C. §1591, it is nevertheless a long-recognized and familiar atrocity.

19.    Pursuant to 18 U.S.C. §1591(a), all who knowingly provide *or* obtain commercial sex that was provided or obtained through force, fraud, and coercion are guilty of sex trafficking.  This includes, at a minimum, ***both*** the 'traffickers' who recruit, harbor, transport, and provide individuals for forced commercial sex work ***and*** the 'Johns' or 'buyers' who obtain, solicit, or patronize forced commercial sex work.[5]

## FACTUAL ALLEGATIONS

### A.    THE HOSPITALITY INDUSTRY'S PARTICIPATION IN THE SEX TRAFFICKING INDUSTRY

*"75% of survivors responding to Polaris's survey reported coming into contact with hotels at some point during their exploitation...Unfortunately, 94% also disclosed that they never received any assistance, concern, or identification from hotel staff."*

*-The Polaris Project* [6]

20.    Human trafficking is the world's fastest growing crime.[7]  While the term 'human trafficking' incorporates all forced labor, the sex trafficking industry alone pulls in an estimated $99 billion each year making it the second largest illicit crime industry behind only the sale of ***all*** illegal drugs.[8]

---

[5] While the 'pimps' or 'providers' are often referred to as the 'traffickers' and the purchasers are referenced as the 'Johns', 'tricks', or 'buyers' [and such nomenclature is used herein], under federal law ***both*** categories are 'traffickers'.
[6] *Recommendations for Hotels and Motels*, THE POLARIS PROJECT, https://polarisproject.org/hotels-motels-recommendations (last visited June 19, 2019).
[7] *Human Trafficking is the World's Fastest Growing Crime*, THE ADVISORY BOARD (May 22, 2017, 9:30 AM), https://www.advisory.com/daily-briefing/2017/05/22/human-trafficking.
[8] *Profits and Poverty: The Economics of Forced Labor*, INTERNATIONAL LABOR ORGANIZATION (May 24, 2014),

21.    Sex traffickers, or 'pimps', use threats, violence, manipulation, lies, debt bondage, and other forms of coercion to compel adults and children to engage in commercial sex acts against their will.

22.    The hospitality industry plays a crucial role in the sex trade.[9]   The trope of the "no-tell motel" is certainly not a new one.  Hotels have long profited from their reputations as havens of privacy and discretion for the offending.  Hotels offer anonymity and non-traceability, making them ideal venues for crime and sex trafficking in particular.

23.    According to National Human Trafficking Hotline statistics, hotels are the top-reported venue, even over commercial front brothels, where sex trafficking acts occur.[10] Traffickers and buyers alike frequently use hotel rooms to exploit victims.

24.    Traffickers use hotels as the hub of their operations. Inside, the victims are harbored, raped, assaulted, and forced to service buyers who come to the hotel solely to purchase sex.  This is referred to as an 'in call'.

25.    Hotels are also the venue of choice for buyers seeking an 'out call,' wherein the buyer rents a hotel room and the trafficker delivers the victim to the buyer's room to complete the sordid transaction.  Unsurprisingly, those on the demand side of this transaction (i.e. those purchasing sex) typically choose to engage in trafficking away from their home, naturally leading to the increased involvement of hotels.  In New York City alone, 45% of all reported sexual exploitation took place in hotels, including the Ritz Carlton and the Plaza.[11]

26.    The problem is industry wide.  In the United States, as much as 63% of all

---

http://www.ilo.org/global/publications/ilo-bookstore/order-online/books/WCMS_243391/lang--en/index.htm.

[9] Giovanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.

[10] *National Human Trafficking Hotline Statistics*, THE POLARIS PROJECT (2016), https://polarisproject.org/resources/2016-hotline statistics.

[11] Giovanna L. C. Cavagnaro, *Sex Trafficking: The hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY, SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.

trafficking incidents happen in hotels ranging from luxury to economy.[12]  Even estimates by attorneys *for* the hospitality industry indicate that eight (8) out of ten (10) arrests for human trafficking occur in or around hotels.[13]

27.   Due to the overall complacency of the hospitality industry on addressing the issue, hotels are *the* venue of choice for sex trafficking.[14]  Traffickers and buyers capitalize on the hotel industry's general refusal to adopt and enforce companywide anti-trafficking policies from the corporate to the property level, train staff on what to look for and how to respond, and/or establish safe and secure reporting mechanisms for those at the point of sale.

28.   Every day, thousands of hotel employees witness manifestations of sex trafficking and commercial exploitation.  Thus, the hospitality industry has the greatest reach to prevent, identify and thwart sexual exploitation where it is most likely to occur.

29.   But aside from their unique position in this epidemic, hotels and motels have the highest obligation to protect their guests from known dangers, including sex trafficking and sexual exploitation, and should be held accountable when they fail to comply.  As aptly stated in a publication by the Cornell University School of Hospitality, "the hospitality industry is undoubtedly involved in the sex trafficking industry…and therefore has an inherent responsibility to deter the crime and can be liable for failing to do so."[15]

30.   Training hotel staff to identify the signs of sex trafficking and sexual exploitation is a critical and obvious legal obligation for the hospitality industry.  The presence of sex

---

[12] Michele Sarkisian, *Adopting the Code: Human Trafficking and the Hospitality Industry*, CORNELL HOSPITALITY REPORT, 15(15), 3-10 (2015).
[13] Rich Keating, *Human Trafficking: What It Is And How It Impacts The Hospitality Industry*, Presentation Delivered At AHIA Sprint Conference 2013, Washington, D.C., *available at* http://www.ahiattorneys.com/aws/AHIA/asset_manager/get_file/92983 (last visited Mar. 1, 2019).
[14] *Hotels Initiative*, THE POLARIS PROJECT, https://polarisproject.org/initiatives/hotels (last visited June 19, 2019).
[15] Giavanna L. C. Cavagnaro, *Sex trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY, SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.

trafficking and sexual exploitation in a hotel is frequently an obvious occurrence and, although unutilized, underutilized, or ineffectively utilized, numerous well-researched trainings and toolkits have been published for the hotel industry over the last decade to help hotel staff in every position to identify the signs.[16]

31.     From check-in to check-out there are a number of indicators that traffickers and their victims exhibit during their stay at a hotel.  With proper training and the implementation of reasonable security measures, hospitality companies could prevent regular sex trafficking under their flag.

32.     Obvious signs of sex trafficking at a hotel may include: an excess of condoms in rooms, individuals carrying or flashing large amounts of cash, excessive amounts of cash stored in the room, renting two (2) rooms next door to each other, declining room service for several consecutive days, significant foot traffic in and out of room(s), men traveling with multiple women who appear unrelated, women known to be staying in rooms without leaving, women displaying physical injuries or signs of fear and anxiety, guests checking in with little or no luggage, hotel guests who prevent another individual from speaking for themselves, or a guest controlling another's identification documents.[17]

33.     Obviously, hotel staff who have undergone training are more aware of sex trafficking when it happens and are more willing to report it than hotel staff who have not been trained.[18] Thus, hospitality companies are obligated to adopt policies and procedures related to sex trafficking and to enforce these policies and procedures as brand standard through to the

---

[16] DEPARTMENT OF HOMELAND SECURITY, *Blue Campaign Toolkit*, attached as "Exhibit A." Available at: https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf.
[17] Id. See also, Shea M. Rhodes, *Sex Trafficking and the Hotel Industry: Criminal and Civil Liability for Hotels and their Employees*, THE INSTITUTE TO ADDRESS CRIMINAL SEXUAL EXPLOITATION, Villanova University School of Law (2015), https://cseinstitute.org/wp-content/uploads/2015/06/Hotel_Policy_Paper-1.pdf.
[18] Giavanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY, SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.

property level.

34.    Hospitality companies can and should mandate that *all* staff working at *all* hotel properties across their brand complete sex trafficking training.[19]

35.    In 2008, 18 U.S.C. § 1595 effectively required all companies with a peculiar proximity to human trafficking to use reasonable measures and conduct proactive audits to ensure that they were not profiting from what they *should know* are human trafficking ventures.

36.    The hospitality industry has been cognizant of their role and responsibilities in the sex trafficking industry for years.

37.    In 2012, an anti-trafficking coalition alerted Defendants Choice Hotels of the likelihood of sex trafficking during the London Olympics, and inquired about the companies anti-trafficking policies, while urging immediate action regarding trafficking.[20]

38.    Choice Hotels claims it has supported the anti-trafficking group Polaris since 2010 and in a partnership with EPCAT ((End Child Prostitution, Pornography and Trafficking of Children for Sexual Purposes)) developed a training module in 2010 for hotel management and staff.[21]

39.    A number of nationwide campaigns recognized the acute issue of human trafficking in the hotel industry and the lack of internal policies to address the issue, and took initiative as early as 1997 with the United Nations Blue Heart Campaign and domestically in 2010 with the Department of Homeland Security's Blue Campaign.[22]   These efforts sought to

---

[19] Shea M. Rhodes, *Sex Trafficking and the Hotel Industry: Criminal and Civil Liability for Hotels and their Employees*, The Institute to Address Criminal Sexual Exploitation, Villanova University School of Law (2015), https://cseinstitute.org/wp-content/uploads/2015/06/Hotel_Policy_Paper-1.pdf.
[20] *Corporate Strategy to Address Human Trafficking: Investor Recommendations for London Olympic Sponsors and Hospitality Companies, Christian Brothers Investment Services*, CBIS, http://cbisonline.com/us/wp-content/uploads/sites/2/2012/09/FINAL_OlympicsReport_9_28.pdf (last visited June 19, 2019).
[21] *Human Rights Policy*, CHOICE HOTELS, https://www.choicehotels.com/about/responsibility/human-rights-policy (last visited June 6, 2019).
[22] *DHS Blue Campaign Five Year Milestone*, DEPARTMENT OF HOMELAND SECURITY (Jul. 22, 2015),

educate both the public and private sectors on identifying and combatting human trafficking, including the hospitality industry and both campaigns released online resources and toolkits publicly accessible to any entity concerned with human trafficking.[23]

40.     Hospitality companies have both the power and responsibility to make sex trafficking difficult for the offenders. Yet, they either repeatedly fail to heed the call or repeatedly fail to execute their own policies.  Instead, each continues to facilitate these crimes at its hotels, content to direct its efforts solely to profit and the bottom line.

## B.       THE DEFENDANTS CONTROL THE HOSPITALITY INDUSTRY

41.     Hotel brands or flags lend their name and likeness to third party owners, while the building and operations are run by a franchisee or a third party management company under the brands' control. In return, the parent brand exchanges the high risk that is inherent in owning an asset like a hotel for the low risk associated with owning a contract or franchise agreement and still profits from putting heads in beds.

42.     The average consumer does not see this relationship.  The parent brand gives the local property its identity.   It provides signage on and in front of the building that assures customers that if they check into that hotel they can expect the standards consistent with the parent hotel brand.  The same brand is emblazoned on everything in the hotel, from the pens in the bedside tables to the staff uniforms at the front desk.

43.     In addition to brand recognition, a marketing organization, hotel listings in the Global Distribution System (GDS) and other online travel agency databases, the brand provides the local hotel with access to its brand wide central reservation system, 800 number, revenue

---

https://www.dhs.gov/blog/2015/07/22/dhs-blue-campaign-five-year-milestone.
[23] *Human Trafficking and the Hospitality Industry*, DEPARTMENT OF HOMELAND SECURITY, https://www.dhs.gov/blue-campaign/hospitalityindustry (last visited June 19, 2019).

management tools, world-class loyalty programs and a website. Thus, booking and room reservations are controlled by the corporate parent brand.[24]

44.  The local hotel typically pays around 10% of their total revenue back to the parent hotel brand and is required to develop and maintain the property in accordance with the parent brand's standards as they are laid out in the franchise agreement.

45.  The parent brand may enforce these standards through periodic inspections and even terminate the contract or franchise agreement if the local hotel is found to be inadequate. This right of the parent hotel brand to enforce their brand standards is also their responsibility.

46.  At the time of the incidents alleged herein Defendant Choice Hotels owned and controlled the Quality Inn® brand.

47.  Parent hotel brands may kick delinquent hotels out of their system but since it is at the expense of terminating their royalty payments it is done sparingly.

### C.    THE DEFENDANTS' WILLFUL BLINDNESS TO SEX TRAFFICKING AT THEIR HOTELS

48.   Defendants Best Western International, Inc., Hyatt Corporation, and Red Lion Hotels Corporation have been on notice of repeated incidences of sex trafficking occurring at their Best Western ®, Hyatt®, and America's Best Value Inn® hotels yet they failed to take the necessary action to prevent sex trafficking and still persist in failing to take the necessary action to prevent or stop sex trafficking at their hotels.

49.  BEST WESTERN INTERNATIONAL ("Best Western"):

a.  Defendant Best Western controls, owns, supervises, or operates the Best Western® Plus DFW Airport Suites located at 5050 West John Carpenter

---

[24] Ellen Meyer, *The Origins and Growth of Franchising in the Hotel Industry*, LODGING MAGAZINE (April 10, 2018) https://lodgingmagazine.com/the-origins-and-growth-of-franchising-in-the-hotel-industry/.

Freeway and Best Western® Irving Inn & Suites at DFW Airport located at 4110 Airport Freeway.

b. Best Western failed to implement and enforce any of their own policies and protect Plaintiff F.M. from being trafficked.

c. Founded in 1946, Best Western represents that they have more than seventy-three (73) years of experience in managing successful brands. From all of their Best Western® properties, Defendant Best Western receives an application fee, a lump sum payment, royalties, and other ongoing financial benefits.

d. Defendant Best Western knew or should have known that the Best Western® where Plaintiff F.M. was trafficked for commercial sex was an area known for a high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff F.M. was trafficked.

e. Despite having knowledge of the extensive prostitution and sex trafficking that occurs at hotels and specifically their hotels, Defendant Best Western has repeatedly failed to thwart these activities.

f. Defendant Best Western can exercise control over Best Western® hotels by:

    i. distributing information to assist employees in identifying human trafficking;

    ii. providing a process for escalating human trafficking concerns within the organization;

    iii. requiring all employees to attend training related to human trafficking;

    iv. providing new hire orientation on human rights and corporate responsibility;

    v.   providing training and education to Best Western® branded hotels through webinars, seminars, conferences, and online portals;

    vi.   developing and holding ongoing training sessions on human trafficking;

    vii.   conducting audits of training protocols; or

    viii.   providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

g.  Defendant Best Western is in an actual and/or apparent agency relationship with its Best Western® hotels offering public lodging services. This agency relationship was created and is maintained through Defendant Best Western's exercise of an ongoing and systemic right of control over Best Western® hotels by Defendant Best Western's operations, including the means and methods of how Best Western® hotels conduct daily business including:

    i.   hosting online bookings on Defendant Best Western's domain;

    ii.   requiring Best Western® hotels to use Defendant Best Western's customer rewards program;

    iii.   setting parameters on employee wages;

    iv.   making employment decisions;

    v.   advertising for employment;

    vi.   sharing profits;

    vii.   standardized training methods for employees;

    viii.   building and maintaining the facility in a manner specified by Best Western;

ix.   standardized or strict rules of operation;

x.   regular inspection of the facility and operation by Best Western;

xi.   fixing prices; or

xii.   other actions that deprive Best Western Plus® hotels of any independence in business operations.

h.   Apparent agency also exists between Defendant Best Western and Best Western® hotels. Defendant Best Western holds out Best Western® hotels to the public as their direct alter-ego each possessing authority to act on the other's behalf.

i.   Given Defendant Best Western's public statements on behalf of its brand and the control it assumed in educating, implementing, and directing its hotels, Defendant Best Western breached its duties in the following ways:

i.   Failed (altogether or adequately) to distribute information to assist employees in identifying human trafficking;

ii.   Failed (altogether or adequately) to provide a process for escalating human trafficking concerns within the organization;

iii.   Failed (altogether or adequately) to mandate managers, employees, or owners attend training related to human trafficking;

iv.   Failed (altogether or adequately) to provide new hire orientation on human rights and corporate responsibility;

v.   Failed (altogether or adequately) to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

18

vi. Failed (altogether or adequately) to develop and hold or require ongoing training sessions on human trafficking; or

vii. Failed (altogether or adequately) to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

j. For years, Defendant Best Western has demonstrated willful blindness to the rampant sex trafficking occurring throughout its Best Western® brand across the country. This entrenched apathy to the real risk of sex trafficking and pervasive willful blindness to the role Best Western® hotels play in sex trafficking facilitated the sex trafficking of Plaintiff F.M. at Best Western® hotels that forms the basis of this complaint.

i. In February 2009, six (6) arrests were made for sex trafficking at a Best Western® in Clackamas, Oregon.[25]

ii. In May 2011, a man was arrested and criminally charged for sex trafficking a fifteen (15) year old girl at a Best Western® in Quincy, Massachusetts.[26]

iii. In December 2013, a man was arrested for trafficking women out of a Best Western® in Rockville, Maryland.[27]

iv. In 2014, the city of Columbus, Ohio brought a nuisance claim for allowing drug deals and sex trafficking at a Best Western® in Columbus,

---

[25] *Girl, 17, found in Clackamas prostitution sting*, https://www.oregonlive.com/clackamascounty/2009/02/girl_17_found_in_clackamas_pro.html (last visited Dec. 6, 2019)
[26] *DA says girl abducted into sex slavery*, http://archive.boston.com/news/local/massachusetts/articles/2011/05/21/man_charged_with_abducting_teen_and_forcing_her_into_prostitution/ (last visited Dec. 6, 2019)
[27] *Inmate May Have Run Prostitution Ring From Jail*, https://www.nbcwashington.com/news/local/Inmate-May-Have-Run-Prostitution-Ring-From-Jail-236453261.html (last visisted Dec. 6, 2019)

Ohio.[28]

   v.   In February 2015, a man was arrested for running a sex trafficking operation out of a Best Western® in Roseville, California.

  vi.   In July 2015, a man was arrested for trafficking women out of a Best Western® in King of Prussia, Pennsylvania.[29]

  vii.   In December 2015, a man was arrested for trafficking a 15 year-old out of a Best Western® in South Plainfield, New Jersey.[30]

  viii.   In December 2016, two (2) men were arrested for sex trafficking women out of a Best Western® in Nashville, Tennessee.[31]

   ix.   In May 2016, thirty-three (33) individuals, including two (2) pastors were arrested on prostitution and trafficking charges for trafficking minors out of a Best Western® in Knoxville, Tennessee.[32]

   x.   In September 2016, a man was arrested at a Best Western® in Bensalem, Pennsylvania for trafficking four women.[33]

   xi.   In April 2017, two (2) people were arrested for sex trafficking a minor at a Best Western® in Denton, Maryland.[34]

  xii.   In July 2017, a man was arrested after trafficking three minors at a Best

---

[28] *Columbus Hotel To Stay Open Among Nuisance Pro*, https://www.youtube.com/watch?v=tQ0avWxGHsI (last visited Dec. 6, 2019)

[29] *Norristown-Area Prostitution Sentencings Begin Tuesday*, https://patch.com/pennsylvania/norristown/norristown-area-prostitution-sentencings-are-tuesday-0 (last visited Dec. 6, 2019)

[30] *Plainfield man who recruited teen for prostitution gets 12-year sentence*, https://www.nj.com/union/2015/12/plainfield_man_who_recruited_girl_for_prostitution.html (last visited Dec. 6, 2019)

[31] https://fox17.com/community/nashville-neighborhood-watch/man-swallows-marijuana-cigarette-during-nashvilleprostitution-sting-at-hotel

[32] *2 pastors, 32 others arrested in prostitution sting*, https://www.wspa.com/news/2-pastors-charged-with-human-trafficking-among-32-arrested-during-sting/1018484391 (last visited Dec. 6, 2019)

[33] *Pimp Who Ran Prostitution Operation From Bensalem Motel Headed To State Prison*, https://patch.com/pennsylvania/bensalem/pimp-who-ran-prostitution-operation-bensalem-motel-headed-state-prison (last visited Dec. 6, 2019)

[34] https://www.wmdt.com/2017/04/two-facing-human-trafficking-charges-for-reportedly-prostituting-child-fromdenton-hotel/

Western® in Woodlawn, Maryland.[35]

    xiii.   In October 2017, a sixteen (16) year old girl was rescued from a Best Western® in Arlington, Virginia, where she was being sex trafficked.[36]

    xiv.   In December 2018, a husband and wife were arrested for engaging in an interstate sex trafficking scheme at a Best Western® in Portsmouth, New Hampshire.[37]

    xv.   In March 2018, a man was investigated for recruiting high school students to participate in his sex trafficking ring. Police arrested him and at a Best Western® in Oklahoma City, Oklahoma with a woman he was selling for sexual favors.[38]

50.      HYATT CORPORATION ("Hyatt"):

    a.  Defendant Hyatt controls, owns, supervises, or operates the Hyatt House® located at 2875 Parkwood Blvd, Frisco, TX 75034.

    b.  Hyatt failed to implement and enforce any of their own policies and protect Plaintiff F.M. from being trafficked.

    c.  Founded in 1954, Hyatt represents that they have more than sixty-five (65) years of experience in managing successful brands. From all of their Hyatt House® properties, Defendant Hyatt receives an application fee, a lump sum payment, royalties, and other ongoing financial benefits.

---

[35] *Son of prominent defense attorney sentenced to 2 years in prostitution case*, https://www.baltimoresun.com/news/maryland/crime/bs-md-matthew-brown-sentencing-20170720-story.html (last visited Dec. 6, 2019)
[36] 2 men plead guilty to two different child sex trafficking operations, https://www.wusa9.com/article/news/local/2-men-plead-guilty-to-two-different-child-sex-traffickingoperations/484712778 (last visited Dec. 6, 2019)
[37] Husband, wife charged in sex trafficking, prostitution 'scheme,' https://www.seacoastonline.com/news/20181214/husband-wife-charged-in-sex-trafficking-prostitution-scheme (last visited Dec. 6, 2019)
[38] Prostitution ring targets Santa Fe students, https://www.edmondsun.com/news/prostitution-ring-targets-santa-fe-students/article_c07be414-23f2-11e8-9b32-ffcbb9a0f9aa.html (last visited Dec. 6, 2019)

d.  Defendant Hyatt knew or should have known that the Hyatt House® where Plaintiff F.M. was trafficked for commercial sex was an area known for a high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff F.M. was trafficked.

e.  Despite having knowledge of the extensive prostitution and sex trafficking that occurs at hotels and specifically their hotels, Defendant Hyatt has repeatedly failed to thwart these activities.

f.  Defendant Hyatt can exercise control over Hyatt House® hotels by:

   i.   distributing information to assist employees in identifying human trafficking;

   ii.  providing a process for escalating human trafficking concerns within the organization;

   iii. requiring all employees to attend training related to human trafficking;

   iv.  providing new hire orientation on human rights and corporate responsibility;

   v.   providing training and education to Hyatt House® branded hotels through webinars, seminars, conferences, and online portals;

   vi.  developing and holding ongoing training sessions on human trafficking;

   vii. conducting audits of training protocols; or

   viii. providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

g.  Defendant Hyatt is in an actual and/or apparent agency relationship with its Hyatt House® hotels offering public lodging services. This agency relationship was created and is maintained through Defendant Hyatt's exercise of an ongoing and systemic right of control over Hyatt House® hotels by Defendant Hyatt's operations, including the means and methods of how Hyatt House® hotels conduct daily business including:

   i.  hosting online bookings on Defendant Hyatt's domain;

   ii.  requiring Hyatt House® hotels to use Defendant Hyatt's customer rewards program;

   iii.  setting parameters on employee wages;

   iv.  making employment decisions;

   v.  advertising for employment;

   vi.  sharing profits;

   vii.  standardized training methods for employees;

   viii.  building and maintaining the facility in a manner specified by Hyatt;

   ix.  standardized or strict rules of operation;

   x.  regular inspection of the facility and operation by Hyatt;

   xi.  fixing prices; or

   xii.  other actions that deprive Hyatt Place® hotels of any independence in their business operations.

h.  Apparent agency also exists between Defendant Hyatt and Hyatt House® hotels. Defendant Hyatt holds out Hyatt House® hotels to the public as their direct alter-ego each possessing authority to act on the other's behalf.

23

i.  Given Defendant Hyatt's public statements on behalf of its brand and the control it assumed in educating, implementing, and directing its hotels, Defendant Hyatt breached its duties in the following ways:

    i.  Failed (altogether or adequately) to distribute information to assist employees in identifying human trafficking;

    ii.  Failed (altogether or adequately) to provide a process for escalating human trafficking concerns within the organization;

    iii.  Failed (altogether or adequately) to mandate managers, employees, or owners attend training related to human trafficking;

    iv.  Failed (altogether or adequately) to provide new hire orientation on human rights and corporate responsibility;

    v.  Failed (altogether or adequately) to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

    vi.  Failed (altogether or adequately) to develop and hold or require ongoing training sessions on human trafficking; or

    vii.  Failed (altogether or adequately) to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

j.  Defendant Hyatt has demonstrated willful blindness to the rampant sex trafficking occurring throughout its hotels across the country. This entrenched apathy to the real risk of sex trafficking and pervasive willful blindness to the role Hyatt® hotels play in sex trafficking facilitated the sex trafficking of

Plaintiff F.M. at Hyatt® hotels that forms the basis of this complaint.

    i.   In September 2019, a man was taken into custody after police said a housekeeper was sexually assaulted inside a room at a Hyatt® House/Oak Brook hotel.[39]

    ii.   In August of 2017, data from Houston's Police Department shows that some of Houston's highest rated hotels have topped a list of locations where prostitution arrests were made. This data included addresses for all prostitution arrests made at Houston hotels from Jan. 1, 2012, through July 7, 2017, with the Hyatt® Regency at one hundred and thirty-six (136) arrests.[40]

    iii.   In February of 2018, a young woman filed a lawsuit in Harris County, Texas against prominent hotel chains, truck stop chains, and the Backpage.com website. One of the hotel chains names in the lawsuit was the Hyatt Hotels Corporation.[41]

    iv.   In 2013, police responded to a call from a Hyatt® Regency in Braintree, Massachusetts. There they rescued a woman who had been trafficked from Maine and kept against her will.[42]

    v.   In 2008, a 21 year old concierge employee at the Hyatt® Regency in Kyiv, Ukraine was arrested for involvement in a trafficking ring hosted at the hotel.  The employee made $100 of the $500/hourly fee the clients

---

[39] *1 in custody after Oak Brook Hyatt House hotel housekeeper sexually assaulted,* https://abc7chicago.com/1-in-custody-after-oak-brook-hotel-housekeeper-sexually-assaulted/5527889/ (last visited Dec. 6, 2019)
[40]        https://www.chron.com/news/houston-texas/houston/article/Houston-s-most-popular-hotels-for-prostitution-11744958.php#photo-13664781
[41] https://www.dailykos.com/stories/2018/2/6/1737587/-Sex-trafficked-child-sues-major-hotel-truck-stop-chains-for-complicity-profiting-off-victims
[42] https://www.enterprisenews.com/news/20160129/local-motels-hotels-are-hotbeds-for-sex-trafficking

paid.  The employee told police his managers were aware of the business of procuration of women onsite. [43]

51.    RED LION HOTELS CORPORATION ("RLH Corporation"):

a.    Defendant RLH Corporation owns, supervises, or operates the America's Best Value Inn® located at 2611 W Airport Fwy, Irving, TX 75062. RLH Corporation failed to implement and enforce any of its own policy or policies and protect Plaintiff F.M. from being sex trafficked.

b.    RLH Corporation knew or should have known that the America's Best Value Inn® hotel where Plaintiff F.M. was trafficked was an area known for high incidence of crime and prone to sex trafficking activity on and around the hotel premises, including when Plaintiff F.M. was trafficked.[44]

c.    Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, Defendant RLH Corporation has repeatedly failed to stop these actions.

d.    Defendant RLH Corporation exercised could have control over America's Best Value Inn® hotels by:

i.    distributing information to assist employees in identifying human trafficking;

ii.    providing a process for escalating human trafficking concerns within the organization;

iii.    requiring employees to attend training related to human trafficking;

---

[43] https://www.kyivpost.com/article/content/ukraine-politics/hyatt-regency-concierge-arrested-in-prostitution-b-30822.html
[44] *Irving Police Draw Attention To Human Sex Trafficking With Red 'X',*
https://dfw.cbslocal.com/2019/02/07/irving-police-attention-human-sex-trafficking-red-x/ (last visited Dec. 6, 2019)

    iv.  providing new hire orientation on human rights and corporate responsibility;

    v.  providing training and education to America's Best Value Inn® branded hotels through webinars, seminars, conferences, and online portals;

    vi.  developing and holding ongoing training sessions on human trafficking; or

    vii.  providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

e.  RLH Corporation was in an actual and/or apparent agency relationship with America's Best Value Inn® branded hotels offering public lodging services in the hotel. This agency relationship was created through Defendant RLH Corporation's exercise of an ongoing and systemic right of control over America's Best Value Inn® hotels by Defendant RLH Corporation's operations, including the means and methods of how America's Best Value Inn® branded hotels conducted daily business through one or more of the following actions:

    i.  hosting online bookings on Defendant RLH Corporation's domain;

    ii.  requiring America's Best Value Inn® branded hotels to use Defendant RLH Corporation's customer rewards program;

    iii.  setting employee wages;

    iv.  making employment decisions;

    v.  advertising for employment;

    vi.  sharing profits;

vii.   standardized training methods for employees;

viii.   building and maintaining the facility in a manner specified by the owner;

ix.   standardized or strict rules of operation;

x.   regular inspection of the facility and operation by owner;

xi.   fixing prices; or

xii.   other actions that deprive America's Best Value Inn® branded hotels of independence in business operations.

f.   An apparent agency also exists between Defendant RLH Corporation and America's Best Value Inn® hotels. Defendant RLH Corporation held out America's Best Value Inn® branded hotels to the public as possessing authority to act on its behalf.

g.   Given Defendant RHL Corporation's public statements on behalf of its hotel brands and the control it assumed in educating, implementing, and directing its branded hotels, including America's Best Value Inn® branded hotels, Defendant RLH Corporation breached its duties in the following ways:

i.   Failed (altogether or adequately) to distribute information to assist employees in identifying human trafficking;

ii.   Failed (altogether or adequately) to provide a process for escalating human trafficking concerns within the organization;

iii.   Failed (altogether or adequately) to mandate managers, employees, or owners attend training related to human trafficking;

iv.   Failed (altogether or adequately) to provide new hire orientation on human rights and corporate responsibility;

28

     v.  Failed (altogether or adequately) to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

    vi.  Failed (altogether or adequately) to develop and hold or require ongoing training sessions on human trafficking; or

   vii.  Failed (altogether or adequately) to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

h.  For years, Defendant RLH Corporation has demonstrated willful blindness to the rampant culture of sex trafficking which tragically occurs on its America's Best Value Inn® branded properties throughout the country. This same entrenched, pervasive willful blindness to sex trafficking facilitated the sex trafficking of Plaintiff F.M. at America's Best Value Inn® hotels that forms the basis of this complaint.

     i.  In December 2014, two men were charged with human trafficking and related charges after two women traveling with them were found held against their will at an America's Best Value Inn in Princess Anne.[45]

    ii.  In January 2018, Lubbock man arrested in Clovis at an America's Best Value Inn for kidnapping and sex trafficking.[46]

   iii.  In March 2018, Austin police charged a man after they believe he

---

[45] *2 men held on human trafficking charges*, https://www.usatoday.com/story/news/nation/2014/12/02/human-trafficking-charges-maryland/19789031/ (last visited Dec. 6, 2019)
[46] Lubbock man arrested in Clovis for kidnapping and sex trafficking, https://abc7amarillo.com/news/local/lubbock-man-arrested-for-kidnapping-and-sex-trafficking (last visited Dec. 6, 2019)

trafficked a 17-year-old girl for sex at an America's Best Value Inn.[47]

    iv.  In May 2019, Nine women, ages 18 to 25, were rescued in a three-day

sex trafficking sting centered in Killeen, Texas at an America's Best

Value Inn.[48]

### D.    THE SEX TRAFFICKING OF F.M.

52.    The facts alleged herein stem from a sex trafficking ring operating in Irving, Texas.  While victimized by her traffickers, F.M. was subject to repeated instances of rape, physical abuse, verbal abuse, exploitation, psychological torment, kidnapping, and false imprisonment at the Defendants' hotels.

53.    At the age of four (4), F.M. was sold to her first trafficker by her father who in return received drugs to sustain his crack addiction. F.M. was given unidentified pills by her trafficker on an average of 5-10 times per day. F.M.'s traffickers would tie her and the other children up and place them blindfolded in the back of a van. When the children arrived at the Defendants' hotels the hotel bellmen would be there to meet them and sent them to assigned hotel rooms where buyers would be waiting for them.

54.    F.M. was bound and blindfolded and brought to assigned rooms where "johns" were awaiting F.M. and other trafficked minors. F.M. was then restrained to the bed and forced to perform vaginal, oral, and anal intercourse. These forced sexual acts occurred at the Defendants' Best Western® and Hyatt Hotels® in Irving and Frisco, Texas, respectively.

55.    There was often a lot of blood left in puddles/splatters around the rooms when the children exited.

---

[47] Man charged after trafficking 17-year-old in motel, police say, https://www.kvue.com/article/news/local/man-charged-after-trafficking-17-year-old-in-motel-police-say/269-525740575 (last visited Dec. 6, 2019)
[48] Nine women rescued, 15 people arrested in sex trafficking sting in Killeen, http://kdhnews.com/news/crime/nine-women-rescued-people-arrested-in-sex-trafficking-sting-in/article_ca62c970-7678-11e9-befb-9f621a0301b8.html (last visited Dec. 6, 2019)

56.     While in the possession of her first trafficker, F.M. was fed sporadically—once every three days—and her clothing was rarely washed.  F.M. was kept in a dog cage and when fed, her meal was provided in a dog bowl. As a result, F.M. displayed signs of poor hygiene, malnourishment, and systematic abuse.

57.     Advertisements of F.M. and the other trafficked minors were posted on Craigslist.

58.     At the age of eighteen (18), F.M. was trafficked by a second man who coerced her into recruiting other women, but she was unsuccessful in doing so. This man used weaponry as an intimidation tactic and often punished F.M. and the other trafficked women violently.

59.     F.M. was given to her third and last trafficker in her twenties (20s). She was trafficked out of America's Best Value Inn in Irving, Texas. F.M.'s trafficker frequented the America's Best Value Inn where he would force her to have sexual intercourse with the hotel's maintenance man to keep the sex trafficking a secret.

60.     While in the possession of her third trafficker, F.M. was hospitalized for an infection. Since F.M. could not "work," F.M.'s trafficker punished her 2-year old son. This man and his friend raped her toddler-son whose genitalia was brutally harmed in the process. F.M. was also subjected to witness the rape of other infants by this same man. This was F.M.'s punishment for not working.

61.      F.M.'s traffickers controlled her by making her dependent on meth, crack cocaine, cocaine, and marijuana.

62.      F.M. was violently abused on multiple occasions. There was often large amounts of blood left in the hotel rooms. On one occasion at a Best Western®, F.M. was violently penetrated by a buyer and a hotel occupant notified the authorities and she was transported to the hospital and diagnosed with "internal bruising."

63.    F.M. had prominent and visible injuries that were observable by hotel staff and patrons.

64.    Prior to, during, and following the incidents described herein, the Defendants had actual and/or constructive notice of drug dealing, prostitution, and/or general safety concerns at their hotels, including, but not limited to, video surveillance of their hotels, as well as oral or written complaints regarding said suspicious activity. The Defendants failed to take any actions to curtail these activities.

65.    Had the Defendants been paying attention to the activities being conducted at their hotels and on their hotel, the apparent red flags outlined above would have been impossible to miss.

### E.    THE DEFENDANTS FACILITATED THE TRAFFICKING OF F.M.

66.    Best Western International, Inc., Hyatt Corporation, and Red Lion Hotels Corporation profited from the sex trafficking of F.M. and knowingly or negligently aided and engaged with her trafficker in his sex trafficking venture. The Defendants leased rooms to F.M.'s trafficker when they knew, or should have known, that he was using their room to imprison F.M., physically assault her, and subject her to repeated exploitation as he forced her into sexual servitude.

67.    Best Western International, Inc., Hyatt Corporation, and Red Lion Hotels Corporation knew, or should have known, that F.M. was being trafficked and that the Defendants Best Western Plus®, Hyatt House®, and America's Best Value Inn were knowingly benefiting financially from said exploitation, because F.M.'s trafficker frequented the Defendants' hotels.

68.    Best Western International, Inc., Hyatt Corporation, and Red Lion Hotels Corporation knew, or should have known, that F.M. was being trafficked because F.M. constantly

entertained traffic to appease her traffickers' demands, and entered and left the establishments blindfolded, behavior that indicated her traffickers were using the Defendants' hotel for an illegal sex trafficking venture.

69.    Best Western International, Inc., Hyatt Corporation, and Red Lion Hotels Corporation actively participated in this illegal endeavor by knowingly or negligently providing lodging to F.M.'s trafficker in which to harbor F.M. while he was trafficking her.

70.    Best Western International, Inc., Hyatt Corporation, and Red Lion Hotels Corporation profited from the sex trafficking of F.M. and knowingly or negligently aided and participated with F.M.'s traffickers in their criminal venture. The Defendant took no action as F.M. repeatedly visited the hotel, often with different guests, without any luggage, blindfolded, and exhibiting signs of malnourishment.

71.    Best Western International, Inc., Hyatt Corporation, and Red Lion Hotels Corporation actively participated in this illegal endeavor by knowingly or negligently providing lodging to those who purchased sex from F.M. in which to harbor F.M. while she was being trafficked.

72.    The Defendants had the opportunity to stop F.M.'s traffickers and offenders like them from victimizing F.M. and others like her.   Instead, the Defendants failed to take reasonable measures to stop sex trafficking from occurring at its hotels.

73.    The Defendants financially benefited from the sex trafficking of F.M., and other victims like her, and developed and maintained business models that attract and foster the commercial sex market for traffickers and buyers alike.

74.    Best Western International, Inc., Hyatt Corporation, and Red Lion Hotels Corporation enjoy the steady stream of income that sex traffickers bring to its budget level

33

hotel brands, such as Best Western Plus®, Hyatt House®, and America's Best Value Inn.

75.    Best Western International, Inc., Hyatt Corporation, and Red Lion Hotels Corporation financially benefit from its ongoing reputation for privacy, discretion, and the facilitation of commercial sex.

76.    The Defendants failed to take any steps to alert the authorities, properly intervene in the situation, or take reasonable security steps to improve awareness of sex trafficking and/or prevent sexual exploitation on its hotels.

77.    The Defendants maintained their deficiencies to maximize profits by reducing the cost of training employees and managers of how to spot the signs of human trafficking and sexual exploitation and what steps to take; not refusing room rentals, or reporting guests to law enforcement, in order to maximize the number of rooms occupied and the corresponding rates, even if the rooms rented were to sex traffickers or buyers; and lowering security costs by not having proper security measures, including, but not limited to, employing qualified security officers to actively combat human trafficking and sexual exploitation.

78.    As a direct and proximate result of these egregious practices on the part of the Defendants, F.M. and victims of sex trafficking and exploitation like her have been permanently injured and damaged physically, emotionally, psychologically, and financially.

## CAUSES OF ACTION

### A.  COUNT ONE – 18 U.S.C §1595 ("TVPRA")

79.    The Plaintiff F.M. incorporates each foregoing allegation.

80.    F.M. is a victim of sex trafficking within the meaning of 18 U.S.C. §1591(a) and is therefore entitled to bring a civil action under 18 U.S.C. §1595.

81.     The Defendants' acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. §1595. Specifically, the Defendants had a statutory obligation not to benefit financially from a venture that they knew, or should have known, to engage in violations of 18 U.S.C. §1591 (a).   At all relevant times, the Defendants breached this duty by participating in, and facilitating, the harboring and providing F.M. for the purposes of commercial sex induced by force, fraud, or coercion, by their acts, omissions, and commissions.

82.     The Defendants have financially benefited as a result of these acts, omissions, and/or commissions by keeping operating costs low, and maintaining the loyalty of the segment of their customer base that seeks to participate in the sex trade.   Moreover, the Defendants directly benefitted from the trafficking of F.M. on each occasion they received payment for rooms that she was being kept in at the Defendants' hotels. The actions, omissions, and/or commissions alleged in this pleading were the but for and proximate cause of F.M.'s injuries and damages.

83.     F.M. has suffered substantial physical and psychological injuries as the result of being trafficked and sexually exploited at the Defendants' hotels and properties in violation of 18 U.S.C. §1591 (a).

**B.  COUNT TWO – TEXAS CIVIL PRACTICE & REMEDIES CODE § 98.002**

84.     The Plaintiff F.M. incorporates each foregoing allegation.

85.      J.C. is a victim of sex trafficking within the meaning of Texas Penal Code §20A.02(a)(7)(A) and is therefore entitled to bring a civil action under Texas Civ. Prac. & Rem. § 98.002.

86.     The Defendants' acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of Texas Civ. Prac. & Rem. § 98.002 in that at all relevant times, the Defendants breached their duties by participating in, and facilitating, the harboring and providing of F.M. for the purposes of commercial sex and intentionally or knowingly benefitted from participating in a venture that trafficked F.M.

87.     The Defendants have financially benefited as a result of these acts, omissions, and/or commissions by keeping operating costs low, and maintaining the loyalty of the segment of their customer base that seeks to participate in the sex trade.   Moreover, the Defendants directly benefitted from the trafficking of F.M. on each occasion they received payment for rooms that she was being kept in at the Defendants' hotels. The actions, omissions, and/or commissions alleged in this pleading were the but-for and proximate cause of F.M.'s injuries and damages.

88.     F.M. has suffered substantial physical and psychological injuries as the result of being trafficked and sexually exploited at the Defendants' hotels and properties in violation of Texas Penal Code §20A.02(a)(7)(A).

## PRAYER FOR RELIEF

WHEREFORE based on the forgoing the Plaintiff seeks injunctive relief in the form of a judgment requiring the Defendants to institute sufficient audits, policies, rules, and requirements of their employees, agents, franchisees, contractors, and/or all others operating under their flag, logo, trademark, or advertising  umbrella to insure that the actions and activities outlined above no longer occur and may not serve in the future to jeopardize the health and safety of individuals similarly situated  to the Plaintiff herein.

AND WHEREFORE on the basis of the foregoing, the Plaintiff requests that a jury be selected to hear this case and render a verdict for the Plaintiff, and against the Defendant, and

that the jury selected award damages to the Plaintiff in an amount which will effectively prevent other similarly caused acts and adequately reflects the enormity of the Defendant's wrongs and injuries to the Plaintiff due to the Defendant's faulty conduct, including but not limited to:

    a.  All available compensatory damages for the described losses with respect to each cause of action;

    b.  past and future medical expenses, as well as the costs associated with past and future life care;

    c.  past and future lost wages and loss of earning capacity;

    d.  past and future emotional distress;

    e.  consequential and/or special damages;

    f.  all available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

    g.  punitive damages with respect to each cause of action;

    h.  reasonable and recoverable attorneys' fees;

    i.  costs of this action; and

    j.  pre-judgment and all other interest recoverable

Further, the Plaintiff requests that the Court enter judgment consistent with the jury's verdict, and prays for any other damages and equitable relief the Court or jury deems appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

The Plaintiff demands a trial by jury on all issues so triable in this civil action.

Dated:  December 9, 2019

Respectfully submitted,

THE LANIER LAW FIRM, P.C.

*/s/ W. Mark Lanier*
W. Mark Lanier
Texas State Bar No.: 11934600
WML@lanierlawfirm.com
Monica Cooper
State Bar No.: 24071344
Monica.Cooper@lanierlawfirm.com
10940 W. Sam Houston Pwky North, Suite 100
Houston, Texas 77064
Telephone: (713) 659-5200
Facsimile: (713) 659-2204

**Attorneys for Plaintiff F.M.**